**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

DONALD EASON,

                     Plaintiff,

v.

                                             Case No. 20-12252

GRETCHEN WHITMER,
JONATHAN BRATER, and
JOCELYN BENSON,

                     Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION**

**I. INTRODUCTION**

Plaintiff Donald Eason is campaigning as an independent candidate for the

United States House of Representatives in Michigan's 13th congressional district. On

August 19, 2020, he filed a two-count complaint alleging violations of his First and

Fourteenth Amendment rights as a candidate and a registered voter based on the

impact of certain Michigan ballot access laws in combination with the effects of

executive orders issued by Defendant Governor Whitmer in response to the COVID-19

pandemic. That same day, he also filed a motion for a temporary restraining order or, in

the alternative, a motion for preliminary injunction. Plaintiff argues that certain

exceptions to the challenged ballot access provisions related to signature requirements

and registration deadlines, which have allegedly been afforded to major-party

candidates, have been unconstitutionally denied to independent candidates like him.

After denying Plaintiff's request for a temporary restraining order, the court ordered Defendants to respond to Plaintiff's motion for preliminary injunction. The court has reviewed the complaint, motion, response, and accompanying exhibits and concludes that a hearing is not necessary. E.D. Mich. LR 7.1(h). For the reasons explained in this order, the court will deny Plaintiff's motion.

## II. BACKGROUND

### A. Michigan's Executive Orders and Ballot Access Provisions

To qualify for placement on the ballot for the November 3, 2020, general election as an independent candidate, Plaintiff was required to submit a qualifying petition to the Michigan Secretary of State by July 16, 2020, with at least 3,000 signatures of registered voters in his district. Mich. Comp. Laws §§ 168.544f, 168.590c. Plaintiff admits that he failed to comply with these ballot access provisions and that he obtained only 2,000 signatures. (ECF No. 1, PageID.3.) He contends that executive orders issued by Governor Whitmer in response to the COVID-19 pandemic made compliance with these ballot access provisions impossible.

In a recent nearly identical case in this court raising a constitutional challenge to Michigan's signature requirement and filing deadlines related to ballot initiatives, the court succinctly summarized the relevant executive orders issued in response to the COVID-19 pandemic:

> On March 10, 2020, Governor Whitmer declared a state of emergency and invoked emergency powers in Executive Order No. 2020-4 in response to the global pandemic caused by the novel coronavirus, COVID-19. *See* EO No. 2020- 4. Beginning three days later, the Governor signed a series of Executive Orders capping public gatherings and closing bars, restaurants, and other places of public accommodation. *See* EO Nos. 2020-5, 2020-9, 2020-21.

> On March 23rd, Governor Whitmer issued Executed Order 2020-21, which ordered all persons not performing essential or critical infrastructure jobs to stay in their place of residence, except in limited circumstances. EO No. 2020-21. This order became known as the "Stay-Home Order." The Stay-Home Order was extended on multiple occasions. *See, e.g.*, EO Nos. 2020-42, 2020-59. Subsequent Executive Orders—namely, 2020-92, 2020-96, 2020-110, and 2020-115—began implementing a regional approach to the reopening of the State, which included a gradual relaxation of certain restrictions and measures. The Stay Home Order ultimately ended on May 31, 2020. . . . *See* EO No. 2020-110. Moreover, as relevant here, Executive Orders 2020-70, 2020-77, 2020-92, 2020-96, and 2020-110 were all interpreted to permit outdoor, expressive First Amendment activities. See FAQ's for EOs 70, 77, 92, 96, and 110.
>
> Beginning July 1, 2020, due to worsening pandemic conditions, the Governor issued a series of Executive Orders reverting back to certain measures, such as prohibiting indoor service in bars, implementing a mask mandate, and limiting public gatherings. *See* EO Nos. 2020-143, EO No. 2020-147, 2020-160. The Governor has not issued any Executive Orders specifically addressing the holding of the November general election.

*Detroit Unity Fund, et al., v. Whitmer et al.*, No. 20-12016 (E.D. Mich. Aug.17, 2020)

(Davis, J.) *aff'd* No. 20-1817, 2020 WL 5230726 (6th Cir. Sept. 2, 2020).

Throughout his motion, Plaintiff refers to, but fails to identify with any particularity, certain "accommodations" to Michigan's ballot access laws which he claims were afforded to major party candidates but denied independent candidates like himself. Attached to his motion as Exhibit D is an explanatory letter dated April 21, 2020, written by the Michigan Secretary of State in response to a preliminary injunction issued by the district court in *Esshaki, et al. v. Whitmer*, et al., No. 20-10831, 2020 WL 1910154 (Apr. 20, 2020) (Berg. J.)*, aff'd in part and rev'd in part*, 813 Fed. Appx. 170 (May 5, 2020). (ECF No. 2-4, PageID.70-74.) The terms of this injunction appear to be the "accommodations" to which Plaintiff alludes.

In *Esshaki*, Sixth Circuit upheld a portion of the preliminary injunction issued by the district court which enjoined the enforcement of Michigan's signature requirement and April 21, 2020 deadline for candidates attempting to gain access to the August 4, 2020, primary election ballot. *Esshaki*, 813 F. App'x at 171. That injunction—and the letter setting guidelines issued by the Michigan Secretary of State in response—was limited to candidates subject to the April 21 filing deadline. *Esshaki*, 2020 WL 1910154, at *12. Plaintiff, who was not required to submit his qualifying petition until July 16, appears to argue that the *Esshaki* injunction requires Defendants to extend his submission deadline and allow him to solicit voter signatures electronically.

### B. Plaintiff's Campaign Efforts

Plaintiff admits that he failed to comply with Michigan's signature requirement or July 16 deadline to submit his qualifying petition. He asserts that he obtained 2,000 signatures. (ECF No. 1, PageID.3.)

Plaintiff submits scant information regarding his signature collection efforts. He does not submit his qualifying petition, and it is not clear when or how Plaintiff began his campaign or signature collection effects; Plaintiff simply alleges that he "hired campaign staff and has been diligently campaigning." (ECF No. 1, PageID.6.) He further claims to have spent $8,000 in signature collection efforts. (ECF No. 2-1, PageID.37.) He gives no details about the timeframe of his signature collection efforts or his collection methods but generally asserts that he postponed his collection efforts in response to Governor Whitmer's emergency executive orders. (ECF No. 2-1, PageID.37.)

Importantly, Plaintiff offers no description of what signature collection efforts, if any, he undertook during the 45 days between the expiration of the Stay-at-Home order

4

on June 1, 2020 and the July 16, 2020 submission deadline. The only information he provides about his campaign activities during this time is that on June 16, 2020, his staff emailed Wayne County Election Commission "requesting a link so that he could obtain electronic petition signatures." (ECF No. 1, PageID.3.) Apparently, he did not receive a response until August 4, 2020, when the Wayne County Election Commission informed his campaign staff that the July 16, 2020 deadline would be strictly enforced. (ECF No. 2-1, PageID.38.)

Plaintiff did not file his complaint and motion until August 19, 2020. He does not explain why he waited 34 days after the deadline to file this action. On August 21, 2020, the court denied his request for TRO and set deadlines for briefing of his request for preliminary injunction. (ECF No. 6.)

### III. STANDARD

"A preliminary injunction is an 'extraordinary remedy never awarded as of right.'" *Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913, 923 (6th Cir. 2020) (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). In order to justify this extraordinary remedy, the moving party bears the burden of proving: "(1) that they are likely to succeed on the merits of their claim, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest." *Id.* (citing *Winter v. NRDC, Inc.*, 555 U.S. at 20). Determining whether to grant a preliminary injunction requires the court to "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)).

## IV. DISCUSSION

Defendants raise two principal arguments in opposition to Plaintiff's motion. First, they argue that his motion should be denied under the equitable doctrine of laches because Plaintiff failed to timely pursue his claims. Second, Defendants assert that Plaintiff's request for preliminary injunction fails on the merits. For the reasons explained below, the court agrees with Defendants on both points.

### A. Laches

Defendants first raise the defense of laches, arguing that Plaintiff's motion should be denied because he has essentially slept on his rights. (ECF No. 9, PageID.106.) The court agrees.

It is a "long-established doctrine" of the courts that "equity aids the vigilant, and not those who slumber on their rights." *Lucking v. Schram*, 117 F.2d 160, 162 (6th Cir. 1941) (quoting *Hays v. Port of Seattle*, 251 U.S. 233, 239 (1920)). Additionally, "[i]t is well established that in election-related matters, extreme diligence and promptness are required." *Mich. Chamber of Commerce v. Land*, 725 F. Supp. 665, 681 (W.D. Mich. 2010) (internal citation and quotation omitted). "As a general rule, last-minute injunctions changing election procedures are strongly disfavored." *Serv. Employees Int'l Union Local 1 v. Husted*, 698 F.3d 341, 345 (6th Cir. 2012); *see also Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S.Ct. 1205, 1207 (2020) ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."). As Judge Davis recently observed, there are several reasons why such last-minute changes to election procedures are strongly disfavored:

> First, "[c]ourt orders affecting elections . . . can themselves result in voter confusion . . . As an election draws closer, that risk will increase." *Purcell*

6

> *v. Gonzalez*, 549 U.S. 1, 4-5 (2006); *see also William v. Rhodes*, 393 U.S. 23, 34-35 (1968) (affirming denial of request for injunction requiring last-minute changes to ballots, given risk of disrupting election process). Second, "[a]s time passes, the state's interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made, and the candidate's claim to be a serious candidate who has received a serious injury becomes less credible by his having slept on his rights." *Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980).

*Detroit Unity Fund*, No. 20-12016, at * 10. These considerations are particularly relevant in this case where the registration deadline expired over one month before Plaintiff filed his motion for a preliminary injunction and, even more so, because local clerks may now begin printing ballots. (ECF No. 9, PageID.104.)

The equitable defenses of laches may bar an action when there is "(1) unreasonable delay in asserting one's rights; and (2) a resulting prejudice to the defending party." *Brown-Graves Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000). Here, both elements are easily met.

Plaintiff offers virtually no explanation for why he filed the instant action 34 days *after* the registration deadline. In *Detroit Unity Fund*, the district court held that laches barred Plaintiff's request for a preliminary injunction filed *two hours before* the expiration of the July 28, 2020 deadline for the submission of county ballot initiatives for the November 3, 2020 election. *Detroit Unity Fund et al.*, No. 20-12016, at *2-3. The Sixth Circuit upheld this holding. *Detroit Unity Fund, et al.*, No. 20-1817, 2020 WL 5230726. Plaintiff's request in the instant case in even more delayed and, consequently, less persuasive than the injunction requested in *Detroit Unity Fund.* Not only did Plaintiff file the instant motion 34 days *after* the submission deadline, but his failure to provide any justification for his delayed filing strongly indicates that the delay is not justified. *See*

*Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) (identifying the "first and most essential" reason to issue a stay of an election-related injunction as plaintiff offering "no reasonable explanation for waiting so long to file this action.").

As to the second element of laches, Plaintiff's significant delay serves to increase the resulting prejudice to Defendants. *See Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980) ("As time passes, the state's interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made, and the candidate's claim to be a serious candidate who has received a serious injury becomes less credible by his having slept on his rights."). As Plaintiff himself observes, local clerks may begin printing ballots on September 5, 2020. (ECF No. 2, PageID.26.) He does not specifically define his requested relief, but presumably, he seeks to either extend the registration deadline or require Defendants to accept his untimely qualifying petition. In either case, granting his motion would require already-printed ballots to be reformatted and reprinted which, in turn, would create significant logistical complications and likely delay additional election deadlines, such as the mailing of absentee ballots. Last-minute changes to election laws are strongly disfavored precisely because of these logistical complications. *See Serv. Employees Int'l Union Local 1*, 698 F.3d at 345; *Republican Nat'l Comm.*, 140 S.Ct. at 1207. Thus, the severity of the resulting prejudice to Defendants supports the application of laches.

Though the court may deny the motion based on laches alone, *see Chirco v. Crosswinds Cmtys., Inc.*, 474 F.3d 227, 232 (6th Cir. 2007), for the reasons explained below, the court will also deny Plaintiff's motion on the merits.

## B. Preliminary Injunction Factors

To justify the extraordinary remedy of a preliminary injunction, Plaintiff must prove that: (1) he is likely to succeed on the merits of his claim, (2) he will suffer irreparable harm, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Adams & Boyle, P.C.*, 956 F.3d at 923 (quoting *Winter,* 555 U.S. at 24). The court concludes that none of these factors weigh in Plaintiff's favor.

Plaintiff asserts that enforcement of Michigan's signature requirement and registration deadlines against the backdrop of executive orders issued in response to the COVID-19 pandemic violates his rights under the First Amendment and his rights to equal protection and due process under the Fourteenth Amendment. The precise contours of his claims are less than clear, but he generally asserts that the burden placed on him is severe and that Defendants have no justification to impose it. (ECF No. 2, PageID.28.) Recent precedent, however, cuts against his position.

Plaintiff has no fundamental right to run for elected office or, as a voter, to vote for a specific candidate. *Bullock v. Carter*, 405 U.S. 134, 142-43 (1972) (no "fundamental right to run for elective office."); *Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 921 (6th Cir. 1998) (citations omitted) ("A voter has no right to vote for a specific candidate or even a particular class of candidates."). It remains true, nonetheless, that ballot access laws implicate "'the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively.'" *Anderson v. Celebrezze*, 460 U.S. 780, 786-87 (1983) (quoting *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968)). These rights are protected under the First and Fourteenth Amendments.

In *Kishore v. Whitmer*, the Sixth Circuit explained the framework governing First and Fourteenth Amendment challenges to ballot access provisions:

> The *Anderson-Burdick* framework governs First and Fourteenth Amendment challenges to ballot-access restrictions. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick*, 504 U.S. at 441, 112 S.Ct. 2059. Within that framework, "the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434, 112 S.Ct. 2059.
>
> When state law imposes "'severe' restrictions," "the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992)). When state law imposes "reasonable, nondiscriminatory restrictions," however, the law is subject to rational-basis review and "the State's important regulatory interests are generally sufficient to justify" the restrictions. *Id.* (quoting *Anderson*, 460 U.S. at 788, 103 S.Ct. 1564). When state law imposes an intermediate restriction that falls somewhere between those two poles, "we weigh the burden imposed by the State's regulation against 'the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Thompson v. Dewine*, 959 F.3d 804, 808 (6th Cir. 2020) (per curiam) (quoting *Burdick*, 504 U.S. at 434, 112 S.Ct. 2059).

*Kishore v. Whitmer*, No. 20-1661, --- F.3d -- , 2020 WL 4932749, at *2 (6th Cir. Aug. 24, 2020) (citing *Anderson*, 460 U.S. 780; *Burdick v. Takushi*, 504 U.S. 428, 441 (1992)).

Although he does not specifically state his position, Plaintiff appears to suggest that the *Esshaki* case stands for the proposition that the ballot access provisions he challenges impose a severe burden. This position misconstrues the narrow holding of *Esshaki*.

In *Esshaki*, the court held that the burden placed upon the plaintiff was severe because "Michigan's Stay-at-Home Order remained in effect through the deadline to submit ballot-access petitions, effectively excluding all candidates who had not already satisfied the signature requirements (and predicted a shutdown)." *Kishore*, 2020 WL

10

4932749, at *3 (citing *Esshaki*, 813 F. App'x at 171). But here, Plaintiff's submission deadline was 45 days *after* the Stay-at-Home order was lifted. Thus, unlike the plaintiff in *Esshaki*, Plaintiff had the opportunity to gather signatures before the order went into effect and after it was lifted. However, Plaintiff fails to describe what signature collection efforts—if any— he undertook during the 45-day period between the expiration of the order and his submission deadline. Because Plaintiff had ample opportunity to collect signatures after the Stay-at-Home order was lifted, "the burden imposed by the Stay-at-Home Order is less onerous than the burden in *Esshaki*." *Kishore,* 2020 WL 4932749, at *3.

In factually similar cases, recent precedent clarifies that ballot access provisions should be assessed under intermediate scrutiny. *Kishore*, 2020 WL 4932749, *3 (citation omitted) ("Because Michigan's ballot-access laws as applied to Kishore and Santa Cruz impose an intermediate burden, the state need only demonstrate that it has "legitimate interests to impose the burden that outweigh it."); *Detroit Unity Fund, et al., v. Whitmer et al.*, No. 20-1817, --- F. App'x. ---, 2020 WL 5230726, at *1 (6th Cir. Sept. 2, 2020) ("In applying an intermediate level of review and weighing the competing interests, the district court found that the filing deadline serves an important government interest in easing the administrative burden on election officials in finalizing and printing the ballots. . . The district court's opinion carefully and correctly sets out the law governing the issues raised.").

Plaintiff asserts that there are "no" alternative means for him to appear on the ballot absent injunctive relief, but he offers no details about his collection efforts before or after the Stay-at-Home order. (ECF No. 2, PageID.29.) While certain social

distancing protocols remain in effect, these protocols have not made signature collection "impossible," as Plaintiff suggests. (ECF No. 2-1, PageID.38.) In fact, the Sixth Circuit recently observed serval possibilities for signature collection which comply with social distancing protocols:

> There's no reason that Plaintiffs can't advertise their initiatives within the bounds of our current situation, such as through social or traditional media inviting interested electors to contact them and bring the petitions to the electors' homes to sign. Or Plaintiffs could bring their petitions to the public by speaking with electors and witnessing the signatures from a safe distance, and sterilizing writing instruments between signatures.

*Thompson v. Dewine*, 959 F.3d 804, 810 (6th Cir. 2020).

Plaintiff had 45 days to collect signatures after the expiration of the Stay-at-Home order and before his submission deadline; he apparently decided to forgo such additional collection efforts. While soliciting signatures in compliance with social distancing protocols may pose *some* additional challenges, the resulting burden would be less than severe. *See Detroit Unity Fund, et al.*, 2020 WL 5230726, at *1. Comparatively, Defendants' interest in enforcing established election procedures and deadlines is significant—particularly because ballot printing may now commence—to ensure an organized election cycle. *See Ohio Democratic Party v. Husted*, 834 F.3d 620, 635 (6th Cir. 2016) (citation omitted) ("[E]asing administrative burdens on boards of elections are undoubtedly important regulatory interests."). Defendants' significant interest in avoiding last-minute changes to election procedures increases each day the parties move closer to the election. *See*, 621 F.2d at 813. Plaintiff has not demonstrated that the less-than-severe burden imposed on him outweighs Defendant's "legitimate interest" in enforcing established election procedures. *Kishore*, 2020 WL 4932749, *3 . This finding is amplified by the lateness of Plaintiff's filing.

Plaintiff provides limited analysis for his equal protection claim. He generally asserts that he has not received the same "accommodations" as major party candidates. He fails to specify, though, what accommodations have been granted. (ECF No 2, PageID.17.) His perfunctory treatment of this issue is reason enough to find that he is not demonstrated a likelihood of success on the merits of this claim. But to the extent Plaintiff suggests that the "accommodations" outlined in the *Esshaki* preliminary injunction should be extended to him, such argument is misplaced because that injunction was limited to candidates subject to the April 21st deadline. *Esshaki v. Whitmer*, 813 F. App'x at 171. Plaintiff offers no explanation as to why the facts of this case warrant similar relief; as explained earlier, the most severe restrictions imposed by the Governor's executive orders expired well in advance of Plaintiff's submission deadline. And to the extent Plaintiff suggests that it is unconstitutional for Defendants to impose ballot access requirements that are different as between major party candidates and independent candidates, he has failed to show that the burden of such differentiated requirements is not outweighed by the state interests advanced, specifically smooth administration of election procedures and ensuring that candidates listed on the ballot amass "a significant modicum of support." *Jenness v. Fortson*, 403 U.S. 431, 442, (1971); *see also American Party of Texas v. White*, 415 U.S. 767, 783 (1974); *Miller v. Lorain Cty. Bd. of Elections*, 141 F.3d 252, 256 (6th Cir. 1998) ("[Plaintiff] has failed to present sufficient evidence that the burden imposed by the state, i.e., an increased signature requirement for independent candidates, is not justified by legitimate state interests.").

In sum, Plaintiff has failed to demonstrate that the burden imposed on him by Michigan's signature requirements and election deadlines, in combination with the executive orders which remain in effect, is not outweighed by Defendants' legitimate interest in avoiding last minute changes to election procedures. Independent of the court's determination that the equitable defense of laches applies, the court's finding that Plaintiff has not demonstrated a likelihood of success on the merits is fatal to his motion. *See Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). Nevertheless, the court observes that the remaining factors it must consider before issuing an injunction (risk of irreparable harm to Plaintiff, balance of equities, and public interest) weigh against Plaintiff.

First, because the court concludes that Plaintiff does not have a strong likelihood of success on the merits, he has not shown that he will suffer irreparable harm. The two remaining factors collapse into a single inquiry because Defendants represent the Government. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Defendants have a significant interest in enforcing election-related deadlines. Disrupting these established deadlines—especially when the deadline expired nearly two months prior—could result in serious administrative complications and election delays. Furthermore, as the Sixth Circuit recently observed in *Thompson*:

> Serious and irreparable harm will thus result if [the Sate] cannot conduct its election in accordance with its lawfully enacted ballot-access regulations. Comparatively, Plaintiffs have not shown that complying with a law we find is likely constitutional will harm them. So the balance of the equities favors Defendants. Finally, giving effect to the will of the people by enforcing the laws they and their representatives enact serves the public interest.

*Thompson*, 959 F.3d at 812. Accordingly, Plaintiff as not demonstrated that the extraordinary remedy of a preliminary injunction is justified in this case.

### V. CONCLUSION

Like every candidate for public office, Plaintiff was required to comply with certain Michigan ballot access laws to earn a place on the November ballot. He failed to do so. The effect of the Governor's executive orders issued in response to the COVID-19 pandemic certainly had an impact on his ability to collect signatures. *Kishore*, 2020 WL 4932749, at *4 ("To be sure, obtaining signatures might well be more difficult now than it would be in normal circumstances."). However, that impact was not severe as the orders did not totally prevent Plaintiff from complying with the challenged election requirements. Plaintiff could have continued his signature collection efforts after the expiration of the Stay-at-Home order or initiated a prompt challenge to the ballot access laws in advance of the filing deadline. He has done neither, choosing instead to file the instant motion as he approaches the eleventh hour, some 34 days after the expiration of the qualifying petition deadline, while offering virtually no explanation for his delay. Though the tardiness of his filing is reason alone for denial, the court also concludes that he has not demonstrated a likelihood of success on the merits of his claims nor that any of the remaining preliminary injunction factors weigh in his favor. Accordingly,

IT IS ORDERED that Plaintiff's motion for a preliminary injunction (ECF No. 2) is DENIED.

s/Robert H. Cleland     /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  September 9, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 9, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner_____/
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\HEK\Civil\20-12252.EASON.preliminary.injunction.HEK.RHC.1.docx